IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BERTHA ALICE GUSTAFSON, | § § | |
| *Plaintiff,* | § § § | SA-20-CV-00393-ESC |
| vs. | § § § | |
| ANDREW M. SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| *Defendant.* | § § | |

### **ORDER**

This order concerns Plaintiff's request for review of a decision of the Social Security Administration to terminate her disability insurance benefits under Title II of the Social Security Act, based on a finding of medical improvement. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Original Brief [#12], Defendant's Brief in Support of the Commissioner's Decision [#14], Plaintiff's Reply Brief [#15], the transcript ("Tr.") of the administrative proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that the Commissioner committed reversible legal error in the administrative proceedings and substantial evidence does not support the Commissioner's decision to terminate Plaintiff's benefits based on a finding of medical improvement. The Commissioner's decision will therefore be **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

### **I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#8, #10].

## II.  Legal Standard

In reviewing the Commissioner's decision to terminate disability benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  See *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining whether a claimant is under a continuing disability or there has been medical improvement and disability benefits should be terminated, the Commissioner employs the eight-step sequential framework set forth in the governing regulations.  *See* 20 C.F.R. § 404.1594(f).  This approach considers the following: (1) whether the claimant is currently engaged in substantial gainful activity, (2) if not, whether the claimant has an impairment or

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

combination of impairments that meets or equals the severity of an impairment enumerated in the relevant regulations, (3) if not, whether there has been medical improvement, (4) if there has been medical improvement, whether the medical improvement is related to the claimant's ability to do work, (5) if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, whether one of the enumerated exceptions to medical improvement is applicable, (6) if there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, whether the combination of remaining impairments is severe, (7) if so, whether the claimant is able to engage in past relevant work, and (8) if not, whether the claimant is able to perform other substantial gainful activity. *Griego v. Sullivan*, 940 F.2d 942, 944 & n.1 (5th Cir. 1991) (citing 20 C.F.R. § 404.1594(f)). In determining medical improvement in disability termination proceedings, the ultimate burden of proof lies with the Commissioner. *Id.* at 944.

### III.  Factual Background

This case concerns the termination of disability benefits due to a finding of medical improvement. Plaintiff Bertha Alice Plaintiff filed a claim for disability insurance benefits ("DIB") in 2008 based on a seizure disorder. In 2009, Plaintiff was found disabled based on a determination that her seizure disorder was a severe impairment and, as of May 7, 2008, met the criteria for Listing 11.03, the listing governing epilepsy at the time. (Tr. 68–71.) Plaintiff received disability benefits in the amount of $863 per month for years, until February 2016, when she was advised that the Social Security Administration ("SSA") was performing "a continuing disability" review in order to determine whether she was still disabled. (Tr. 320, 324.)

On October 12, 2016, the SSA advised Plaintiff that she was no longer disabled due to a finding of medical improvement and would stop receiving benefits as of December 2016. (Tr. 151–52.) Plaintiff requested reconsideration of the decision, but the decision was upheld in a decision by a State Agency Disability Hearing Officer. (Tr. 162–83.) Plaintiff made a timely request for review and a hearing before an administrative law judge ("ALJ"). (Tr. 187.)

Plaintiff and her attorney Greg Reed attended the administrative hearing before ALJ Katherine Brown on October 23, 2018. (Tr. 106–46.) Plaintiff, vocational expert ("VE") Ms. Johnson, and Plaintiff's husband, Dr. Malcolm Gustafson, provided testimony at the hearing. (*Id.*) At the time of her hearing, Plaintiff was 55 years old, an individual "closely approaching advanced age,"[2] and had obtained a high school diploma. (Tr. 111, 140.) Plaintiff had past work as a fast food worker and a hostess. (Tr. 138, 140.) Plaintiff and her husband both testified that Plaintiff has suffered from seizures since she was 16 years old; that she continues to take seizure medication; and that the medication causes significant side effects such as confusion, dizziness, and loss of balance. (Tr. 123–24.)

Both Plaintiff and her husband also testified that Plaintiff continues to suffer from an average of 10 to 15 petit mal seizures per week. (Tr. 125, 130–31.) Plaintiff testified that she experiences four or five grand mal seizures per week, but that these seizures usually occur at night. (Tr. 125, 130–31.) At the hearing before the ALJ, Plaintiff had visible marks on her arms and hands from where she has injured herself during petit mal seizures. (Tr. 123–24.) Plaintiff explained to the ALJ that during these seizures, she loses awareness of what she is doing, and frequently falls to the ground and has bumped her head repeatedly during these episodes. (Tr. 124–25.) Plaintiff and her husband both described Plaintiff as doing dangerous things when she

---

[2] By the time the ALJ issued her decision, Plaintiff had changed age categories to an individual of "advanced age" (age 55+).

is seizing, such as trying to hand a hot pan to her husband, thinking it is a plate of food. (Tr. 124–25.) Plaintiff's husband further testified that when Plaintiff is experiencing a seizure, she becomes nonresponsive or talks nonsensically in Spanish, her native language, or, more recently, in English. (Tr. 130.) When this occurs, Dr. Gustafson guides Plaintiff to bed, where she sleeps from 15 minutes to two hours after a seizure. (*Id.*) Dr. Gustafson started working from home six years before the ALJ's hearing in order to care for Plaintiff and to monitor her safety. (*Id.* at 135–36.)

Despite this testimony, the ALJ issued an unfavorable decision on March 4, 2019, finding Plaintiff no longer disabled. (Tr. 17–24.) The ALJ determined that at the time of Plaintiff's prior determination (which is known as the "comparison point decision" or "CPD" for purposes of determining medical improvement), Plaintiff had a seizure disorder that satisfied Listing 11.03 and rendered her presumptively disabled. (Tr. 19.) The ALJ then applied the eight-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of her decision. (Tr. 19.) Then, the ALJ found that the medical evidence establishes that Plaintiff did not develop any additional impairments after the CPD through the date of her decision but that Plaintiff's seizure impairment remains severe. (Tr. 19–20.) The ALJ found, however, that, although Plaintiff continues to suffer from a seizure disorder, there has been medical improvement of her condition, and that since October 12, 2016, it no longer satisfies the requirements of Listing 11.02.[3] (Tr. 19.) Because the ALJ concluded Plaintiff was no longer presumptively disabled by satisfying a listing, the ALJ went on to the other steps in the sequential evaluation process.

---

[3] Listing 11.02 is now the listing for seizure disorders and epilepsy.

Before reaching the next step of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can never climb ladders, ropes, or scaffolds and can have no exposure to workplace hazards such as moving machinery, open flames or unprotected heights.  (Tr. 20–23.)  Then, the ALJ determined that Plaintiff has been capable of performing her past relevant work as a hostess and fast food worker since October 12, 2016.  (Tr. 23–24.)  Accordingly, the ALJ determined that Plaintiff's disability ended on October 12, 2016, and she has not become disabled again since this date and is therefore no longer entitled to receive benefits.  (Tr. 24.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on January 30, 2020.  (Tr. 1–6.)  Having exhausted all administrative remedies, Plaintiff brought the instant action on March 27, 2020, seeking judicial review pursuant to 42 U.S.C. § 405(g).

## IV.  Analysis

Plaintiff raises two points of error in this appeal: (1) the ALJ's finding that medical improvement occurred is not supported by substantial evidence and the ALJ failed to apply the appropriate legal standard in analyzing the medical evidence; and (2) the ALJ failed to fully account for Plaintiff's seizure disorder in making her RFC determination.  The Court agrees with Plaintiff's first point of error and finds that the ALJ committed reversible legal error with respect to the finding of medical improvement.  Because this error requires remand for further development of the record and additional proceedings, the Court need not and will not address Plaintiff's second point of error.

Disability benefits may be terminated where substantial evidence demonstrates that "there has been any medical improvement in the individual's impairment . . . (other than medical

improvement which is not related to the individual's ability to work)" and "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1). The implementing regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Determining medical improvement and its relationship to a claimant's ability to do work requires "*a comparison of prior and current medical evidence* which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.* at § 404.1594(c)(1) (emphasis added).

Importantly, in a termination of benefits case, the Agency bears the burden that a claimant is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing 42 U.S.C. § 423(f)). Termination of benefits is only appropriate when there is substantial evidence that "(1) there has been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful activity." *Teague v. Astrue*, 342 F. App'x 962, 964 (5th Cir. 2009).

The ALJ found that Plaintiff's seizure disorder, though still severe, no longer satisfies the requirements of Listing 11.02, because medical improvement occurred as of October 12, 2016. (Tr. 19–20.) Listing 11.02 requires documentation of a typical seizure characterized by one of four descriptions:

> A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment;
>
> B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment;

      C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

          1. Physical functioning;
          2. Understanding, remembering, or applying information;
          3. Interacting with others;
          4. Concentrating, persisting, or maintaining pace; or
          5. Adapting or managing oneself; or

      D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the same five following functional categories as listed at (C).

20 C.F.R. Pt. 404, Supt. P, App. 1, § 11.02 (effective Mar. 14, 2018). The ALJ found that Plaintiff's symptoms do not meet or equal the symptoms listed in Listing 11.02, because the record "does not contain objective evidence" that Plaintiff continued to suffer from generalized tonic-clonic seizures (grand mal seizures) or dyscognitive seizures (petit seizures) at a frequency required by the Listing. (Tr. 19–20.)

     Plaintiff argues this was error because a finding of medical improvement requires a "comparison of prior and current medical evidence" and evidence of "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *See* 20 C.F.R. § 404.1594(c)(1). Yet, Plaintiff argues, the ALJ did not even discuss the 2008 and 2009 evidence that was the basis for the original disability determination. Plaintiff argues this alone precludes meaningful judicial review of the ALJ's finding of medical improvement and requires remand. The Court agrees.

     The medical evidence of record is minimal in this case. The record submitted by the Commissioner contains several treatment and office notes from Plaintiff's treating providers, Dr. Linda Esquivel and Margaret Heller, PA-C, from 2016 through 2018, as well as Plaintiff's recent seizure diary. PA Heller recorded an "increase in seizure episodes" in June 30, 2016 (Tr. 405),

and Dr. Esquivel's notes record that Plaintiff reported 14 to 25 petit mal seizures and one tonic-clonic seizure per month in May 2017 (Tr. 488–89, 494); near daily seizures in November 2017, despite taking her medication (Tr. 503); and multiple seizures per day in May 2018 (Tr. 513). Plaintiff's seizure diary from July 30, 3017 to September 1, 2018, reports that she experienced 18 seizures in August 2017, 17 seizures in September 2017, 19 seizures in October 2017, 34 in November 2017, 23 in December 2017, 15 in January 2018, 16 in February 2018, 24 in March 2018, 21 in April 2018, 19 in May 2018, 17 in June 2018, 16 in July 2018, and 23 in August 2018 (Tr. 518–26). The record does not contain any of the original medical evidence upon which the SSA originally found Plaintiff disabled.

The ALJ did not discuss any of the medical evidence in the portions of her opinion devoted to Listing 11.02 and the finding of medical improvement; she only generally cites to her consideration of the medical evidence as a whole. (Tr. 19–20.) However, in her analysis of Plaintiff's RFC, the ALJ addressed the specific pieces of medical evidence that informed her decision that Plaintiff could perform light work, with certain modifications, despite her seizure disorder. (Tr. 20–23.) The Court has therefore considered this analysis in evaluating whether substantial evidence supports the ALJ's finding of medical improvement in this case and whether any reversible legal error was committed in making this decision.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her seizure disorder were not consistent with the objective medical evidence. (Tr. 21.) In reaching this conclusion, the ALJ discussed and relied upon the following medical evidence:

- In June 2016, Plaintiff had an office visit with PA Heller, during which it was noted that her seizures were controlled on medication and Plaintiff was directed to continue with her current medication dosage; that her seizures occurred mostly at night; and

- that Plaintiff was not scheduled to return for a follow up appointment until six months later in December 2016 (Tr. 405);

- In February 2017, Plaintiff provided information regarding the frequency of her seizures and her medication dosages, and Plaintiff was still taking the prescribed Levetiracetam and Phenytoin for her seizures (Tr. 490);

- In May 2017, Plaintiff reported to her treating physician Dr. Esquivel that she continued to experience 14 to 25 petit mal seizures and one grand mal seizure per month; but, despite Dr. Esquivel's referral to a neurologist for adjustment of medication, Dr. Esquivel noted that Plaintiff "refuses to see neurology" (Tr. 494);

- In May 2018, Dr. Esquivel noted the ongoing referral to neurology; Dr. Esquivel's notes indicate that Plaintiff relayed she was not refusing to see a neurologist but that she could not afford to see one due to cost; Plaintiff provided Dr. Esquivel with her seizure diary, and a follow up was scheduled for three months later (Tr. 513).

(Tr. 20–22.) The ALJ also found the following to be significant factors impugning the credibility of Plaintiff regarding the reported frequency and intensity of her petit and grand mal seizures:

- No treating provider has ever witnessed one of Plaintiff's seizures;

- There is no evidence of any complaint to any treating provider regarding side effects from medications during the relevant period;

- There is no record of any specialized examination or treatment and no updated current imaging;

- There is no documentation that Plaintiff has pursued specialized treatment or that the cost is out of Plaintiff's reach.

(*Id.*)

In her discussion, the ALJ also indicated that she gave little weight to the opinions of Plaintiff's treating provider, Dr. Esquivel, who opined in November 2017 and May 2018 that Plaintiff was unable to work in any capacity due to her seizure disorder. (Tr. 22.) The ALJ found that these opinions were based solely on self-reporting by Plaintiff of her symptoms and not on any objective evaluation. (Tr. 22.) The ALJ also gave little weight to the findings of fact

10

made by State agency medical consultant Roberta Herman, M.D., who found Plaintiff could perform work at a medium exertional level (a higher level than that ultimately found by the ALJ), concluding that this opinion was also unsupported by the medical evidence. (Tr. 22.) Finally, the ALJ gave little weight to the testimony of Dr. Gustafson, Plaintiff's husband, because his statements were "lay opinion based on casual observation, rather than objective medical examination and testing." (Tr. 23.)

At no point in the discussion of Plaintiff's RFC or anywhere else in her opinion, did the ALJ discuss the medical evidence that informed the original finding of disability from 2008 and 2009. As noted, the record submitted by the Commissioner does not contain any of this evidence. Nor was the ALJ's opinion based on objective medical evidence from 2016 to 2018 documenting a clear improvement of the symptoms associated with Plaintiff's seizure disorder. Instead, the primary basis for the ALJ's finding of medical improvement in this case was a perceived *absence* of objective medical evidence corroborating Plaintiff's and her husband's descriptions of her symptoms. Accordingly, nowhere in the ALJ's opinion did she make a "comparison of prior and current medical evidence" demonstrating changes or improvement in the symptoms associated with Plaintiff's seizure disorder. *See* 20 C.F.R. § 404.1594(b)(1). This was error.

Although there is not a Fifth Circuit case on point on this issue, multiple circuit courts of appeals have found reversal and remand to be required on facts similar to those presented here. In *Veino v. Barnhart*, 312 F.3d 578 (2d Cir. 2002), the SSA had terminated the claimant's supplemental security income based on a finding of medical improvement. Upon further review and after a hearing, the ALJ concluded that at the time of the CPD, the claimant's impairments (anxiety disorder, paranoid personality, and alcoholism) were of a severity to satisfy Listing

11

12.04, but that there had been a clear improvement in the claimant's condition. *Veino*, 312 F.3d at 583–84. The claimant appealed, arguing that the Commissioner had failed to prove that his medical condition had improved because the record contained no medical evidence as to his condition at the time of the original disability determination. *Id.* at 586. The Second Circuit agreed and remanded the case for supplementation of the record and further consideration. *Id.* In doing so, the Court of Appeals faulted the ALJ for failing to "cite or include in the record the 1982 medical evidence," and instead only including and referencing a decision of a disability hearing officer summarizing that evidence. *Id.* at 587. The Court of Appeals reasoned that "without any of the 1982 medical evidence in the record before us, this Court cannot make a reasoned determination as to whether the DHO's summary is accurate or adequate" and the ALJ had failed to conduct the comparison between prior and current medical evidence mandated by the regulations. *Id.* at 586–87.

Similarly, the Eleventh Circuit Court of Appeals reversed and remanded a termination-of-benefits decision, concluding that the ALJ, by focusing only on the current evidence of whether the claimant was disabled, had failed to undertake the required comparison with the medical evidence upon which the claimant was originally found to be disabled. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). In doing so, the Eleventh Circuit emphasized the "presumptive validity" of the original disability decision and the requirement that there only be termination of benefits where "there is substantial evidence of actual improvement to the point of no disability." *Id.* The Court of Appeals further explained that "[t]his presumption is necessary to avoid re-litigating the evidence presented in support of the initial administrative decision." *Id.*

In a *per curiam* opinion, the Tenth Circuit also summarily reversed a decision terminating disability benefits where there had been no evaluation of the medical evidence for the original

finding of disability. *Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir. 1984). The Tenth Circuit found that this "failure to apply the correct legal standard" was, in itself, "sufficient to command reversal." *Id.* *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003) ("the lack of evidence of medical treatment does not constitute objective medical evidence of improvement").

A number of district courts across the country have followed suit. *See, e.g.*, *Marcelin v. Berryhill*, No. CV 16-14075, 2017 WL 3981155, at \*6 (E.D. La. Aug. 15, 2017), *report and recommendation adopted*, No. CV 16-14075, 2017 WL 3971276 (E.D. La. Sept. 8, 2017) (remanding for further proceedings where ALJ failed to cite or discuss any of the medical evidence that supported initial finding of disability); *Spratt v. Colvin*, No. CIV-13-299-D, 2014 WL 2153933, at \*4 (W.D. Okla. May 20, 2014) (remanding for further proceedings where record lacked foundation upon which court could make "reasoned assessment of whether there is substantial evidence to support the Commissioner's finding" that the claimant's condition had improved) (internal quotation and citation omitted); *Chambers v. Astrue*, No. 6:11–CV–06198 RE, 2012 WL 2836224, at \*3 (D. Or. July 10, 2012) (remanding for further proceedings where record did not include any medical records of claimant's condition at time of disability determination and finding insufficient ALJ's "two sentence summary of the CPD medical evidence"); *Lee v. Astrue*, No. 2:10–cv–03162 KJN, 2012 WL 928741, at \*6 (E.D. Cal. Mar. 19, 2012) (remanding for further proceedings on medical improvement because the regulations do "not relieve the Commissioner or an ALJ from the requirement to conduct the comparison of medical severity and medical evidence otherwise called for in the regulations"); *Osborn v. Barnhart*, No. 03–M–2529, 2004 WL 2091480, at \*2 (D. Colo. Aug. 6, 2004) (finding reversible legal error where ALJ did not state in his decision on medical improvement "how he compared

13

the symptoms, signs and laboratory findings, in [the claimant's] earlier records with the later reports").

Importantly, several of these cases have addressed the issue of whether a finding that a claimant no longer satisfies a listing can give rise to an inference of medical improvement. This is precisely what the ALJ appears to have done in this case. After finding that the medical evidence no longer satisfies Listing 11.02, the ALJ—without substantive discussion or reference to the original medical evidence—concluded that medical improvement had occurred. *See Lee*, 2012 WL 928741, at *6 (concluding that regulations do "not direct a finding of 'medical improvement' where the claimant no longer meets a listing"); *Osborn*, 2004 WL 2091480, at * 2 (concluding that the ALJ "indulged in the presumption that the claimant's failure to meet the listing requirement in the year 2000 was the result of some medical improvement in his impairments" and that this was error). The Commissioner argues here that because substantial evidence supports the ALJ's finding that Plaintiff no longer satisfies the Listing, not discussing the evidence from 2008 and 2009 was "harmless at most." (Commissioner Brief [#14] at 18.) The Court disagrees. To follow the Commissioner's reasoning would permit an ALJ to evade the requirement of finding an actual improvement in the claimant's condition and instead simply supplant his or her own new analysis of the listings for the previous one. Because the Commissioner bears the burden of demonstrating medical improvement,[4] this error was not harmless.

In summary, the Court finds that the ALJ failed to apply the correct legal standard in evaluating medical improvement in this case. Ultimately, the ALJ made a finding of medical

---

[4] In contrast, the claimant bears the burden of proof at the first four steps of the sequential evaluation process, including at step three in proving that a condition satisfies a given listing. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

improvement based on "the lack of objective evidence" that Plaintiff's seizure disorder satisfies Listing 11.02.  In doing so, the ALJ improperly placed the burden of proof on Plaintiff to negate an inference of medical improvement, rather than requiring the Commissioner to carry the burden to demonstrate (through a comparison of prior and current medical evidence) that improvement indeed occurred.  If the ALJ believed the record to be insufficient to evaluate the status of Plaintiff's seizure disorder, the ALJ could have ordered further development of the record.  *See* 20 C.F.R. § 404.1520b(b)(2)(i-iv) (providing that when the evidence in the record is incomplete or inconsistent, the ALJ has the discretion to further develop the record, including as possibilities of recontacting a treating source, requesting additional evidence, a consultative examination, and others).  The ALJ chose not to do so.

The governing regulations required the ALJ to make a comparison of the prior and current medical evidence, and she failed to undertake this analysis.  A lack of evidence of medical treatment does not constitute objective medical evidence of improvement.  Because the record is devoid of the original medical evidence underlying the original finding that Plaintiff was disabled, there cannot be substantial evidence of medical improvement in this case.

## V.  Conclusion

Based on the foregoing, the Court finds that reversible error was committed during these proceedings and that substantial evidence does not support the Commissioner's finding of medical improvement.  This error warrants remand for further development of the record and additional proceedings. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED** and this case be **REMANDED** for further fact-finding consistent with this opinion.

**IT IS SO ORDERED.**

SIGNED this 26th day of July, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE